UNITED STATES of America,
Appellee,

v.

Ray SALADINO, Defendant–Appellant.

Docket No. 02–1383.

United States Court of Appeals,
Second Circuit.

April 3, 2003.

Marcia G. Shein, Decatur, GA, for Appellant.

Susan Corkery, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Richard T. Faughnan, Assistant United States Attorney), Brooklyn, NY, for Appellee, of counsel.

Present: CALABRESI, SACK, Circuit Judges, and HPAULEY III,* District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

The defendant Ray Saladino appeals from a judgment entered on May 15, 2002 in the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*) denying his motion to compel the government to file a motion to reduce Saladino's sentence, based upon Saladino's substantial assistance to law enforcement authorities, pursuant to a cooperation agreement between Saladino and the government and Rule 35(b) of the Federal Rules of Criminal Procedure.

In 1994, Saladino began serving a twenty-year term of imprisonment for various robbery convictions. In 1997, he began operating as an undercover informant in the Metropolitan Detention Center in Brooklyn, New York, as part of an undercover corruption investigation conducted by federal law enforcement authorities. Saladino was the principal informant used during the MDC investigation, which yielded seventeen convictions by guilty plea and two convictions by jury trial.

The relationship between Saladino and the government was governed by a written cooperation agreement. In paragraph six, this agreement provided:

6. If the Office determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Office will file a motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure with the sentencing Court setting forth the nature and extent of his cooperation. Such a motion will permit the Court, in its discretion, to reduce the sentence imposed by the Court on March 4, 1994. In this connection, it is understood that a good faith determination by the Office as to whether the defendant has cooperated fully and provided substantial assistance and has otherwise complied with the terms of this agreement, and the Office's good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him.

In 1998, two federal prosecutors began to suspect that Saladino had violated his

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

agreement by (1) dealing heroin to inmates in the MDC, (2) steering inmates toward other heroin dealers in the MDC, (3) failing to disclose these facts, and other prior criminal activities, to the government, and (4) testifying falsely regarding these facts in one of the MDC corruption trials. The two prosecutors then confronted Saladino with these allegations. Saladino denied dealing heroin in the MDC, and alleged that he had already disclosed his most recent steering activities to an FBI agent, who understood those activities to be legal, legitimate aspects of Saladino's cooperation with the government.

After conducting a brief investigation, the prosecutors concluded that Saladino was lying, and that he had breached his cooperation agreement. They dismissed several pending corruption indictments based on Saladino's assistance and refused to file a Rule 35(b) motion on Saladino's behalf.

In the district court, Saladino argued that the government had acted in bad faith by refusing to file a Rule 35(b) motion to reduce his sentence. The court held an evidentiary hearing in which the two prosecutors and two FBI agents testified regarding Saladino's cooperation and his alleged criminal activities. The court found that the government had a good-faith basis to conclude that Saladino had breached his cooperation agreement, and the court therefore denied Saladino's motion to compel.

We have reviewed the record and found no basis upon which to disagree with the district court. The prosecutors interviewed two credible eyewitnesses who accused Saladino of selling heroin in the MDC. Saladino admitted that he had not disclosed some of his prior steering activities to law enforcement authorities. In light of these facts, we agree that the government acted in good faith by refusing to file a Rule 35(b) motion on Saladino's behalf.

In this appeal, Saladino also argues that the government's good-faith belief that he breached his cooperation agreement is not enough to nullify the agreement itself. He contends that under Rule 35(b), the government bears the burden of proving by a preponderance of the evidence that he breached the cooperation agreement.

Whatever merit this argument might or might not have in other cases, in the instant case, it has none. Saladino's cooperation agreement clearly states that he would be bound by the prosecutor's "good faith determination" as to whether he had "complied with the terms of [the] agreement," and the prosecutor's "good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation." Because we interpret cooperation agreements in accordance with the principles of contract law, see, e.g., United States v. Rexach, 896 F.2d 710, 713 (2d Cir.1990), we must apply a good-faith standard to the government's refusal to file a Rule 35(b) motion. And as we have already explained, the government clearly had a good-faith basis for this refusal.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.